UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOBBY M. ROSS, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
|    vs. | ) Cause No. 1:15-cv-1873-WTL-DKL |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security,[1] | ) |
| | ) |
|    Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Bobby Ross requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("Commissioner"), denying his application for a period of disability and Disability Insurance Benefits ("DIB"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Ross protectively filed his application for DIB in October 2011, alleging onset of disability on September 21, 2011. The Social Security Administration initially denied Ross's application on March 7, 2012. After Ross timely requested reconsideration, the Social Security Administration again denied his claim on August 7, 2012. Thereafter, Ross requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on February 11, 2014, at which Ross and a vocational expert testified. The ALJ issued his decision denying Ross's DIB

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill automatically became the Defendant in this case when she succeeded Carolyn Colvin as the Acting Commissioner of Social Security on January 23, 2017.

application on March 14, 2014. After the Appeals Council denied Ross's request for review, he filed this action seeking judicial review.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this court "so long as substantial evidence supports them and no error of law

occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony presented," he must "provide an accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012). "If a decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, a remand is required." *Id.* (citation omitted).

### III. THE ALJ'S DECISION

The ALJ found at step one that Ross had not engaged in substantial gainful activity since September 21, 2011, the alleged disability onset date. At step two, the ALJ determined that Ross had the following severe impairments: cerebral palsy; degenerative disc disease; degenerative joint disease in the left knee and left shoulder; periodic movement disorder; learning disability, math; anxiety; and depression. The ALJ found at step three that these impairments did not, individually or in combination, meet or equal the severity of one of the listed impairments. The ALJ's residual functional capacity ("RFC") determination was as follows:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours out of eight hours; and sit for six of eight hours, provided the work permits him to alternate to a sitting or standing position at his option for one to two minutes each hour. He can occasionally climb ropes, ladders or scaffolds and occasionally balance, stoop, or crouch but never kneel or crawl. He should avoid overhead work with the left shoulder. The claimant should not work around unprotected heights or around dangerous moving machinery, operate a motor vehicle, or work around open bodies of water or open flames. He should avoid work around concentrated exposure [to] extremes of temperatures and humidity. He should not have work that requires mathematics above level 1 or that requires more than 2-3

3

>steps per task. Lastly, the work should not require more than superficial
>interaction with the public, co-workers or supervisors.

Record at 21. The ALJ concluded at step four that Ross could not perform his past relevant work as an electrician and dryer operator. At step five, the ALJ found that, considering his age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that he could perform, including hand packager, production worker, and injection molding machine tender. Accordingly, the ALJ concluded that Ross was not disabled.

## IV. DISCUSSION[2]

Ross argues that the ALJ erred in several respects, each of which is addressed, in turn, below.

### A. Failure to Address All Impairments and Symptoms

Ross first argues that the ALJ erred in failing to address the effects of all of Ross's medically determinable impairments and the symptoms he alleges are caused by them. When Ross applied for benefits, he claimed that he was disabled due to the following impairments: degenerative disc disease; bone spurs; cerebral palsy and resultant left-sided weakness; cramping; legs, feet, and hand spasms; asthma; knee pain; swelling in feet and legs; sleep Disorder-PMLD;[3] severe anxiety and depression-paranoia. Dkt. No. 23 at 4-5 (citing two Notices of Disapproved Claim which lists those claimed impairments). The ALJ found that Ross had the following severe impairments: "cerebral palsy; degenerative disc disease; degenerative

---

[2] The Court notes that its review of the issues raised in this case was made more difficult by the fact that Ross's counsel failed to set forth the relevant facts, including a discussion of the relevant medical records, in her brief. Instead she "incorporated by reference" portions of the pre-hearing brief she submitted to the ALJ in which she simply lists, in bullet point and table format, snippets from various medical records. It is far more effective to provide a narrative of the relevant facts of record with citations to the relevant pages of the administrative record.

[3] The Court could not readily find an explanation of this abbreviation in the record. The Court assumes it refers to the primary periodic limb disorder with which Ross was diagnosed as a result of a sleep study he underwent in 2011.

4

joint disease in the left knee and left shoulder; periodic movement disorder, learning disability, math; anxiety and depression." R. at 19. Ross argues that the ALJ failed to address the remainder of his impairments, "most notably the left sided weakness, spasms, muscle cramping, asthma, swelling in legs, and feet, and paranoia."[4] Dkt. No. 23 at 5.

The Court agrees that the ALJ's failure to address some of the symptoms testified to by Ross and explain why he did not find them disabling requires remand. As the ALJ acknowledged in his decision, under the standard that was applicable at the time of the ALJ's decision, with regard to subjective symptoms such as pain, if a claimant had a medically determinable impairment that was reasonably expected to produce pain, then the ALJ was required to evaluate the credibility of the claimant's testimony regarding the extent of that pain. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96-7p,[5] and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The regulations further provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2). "The determination of credibility must contain specific reasons for the

---

[4]Ross actually lists over twenty impairments and symptoms that are mentioned in his medical records that he says the ALJ should have considered. With regard to most of those conditions (some of which appear to be symptoms, not impairments), he makes no effort to explain how they affect his ability to work, and it is "the claimant's obligation to explain why certain conditions are disabling." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (*Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013)).

[5]S.S.R. 96-7p recently has been superseded by S.S.R. 16-3p, which the agency explained "eliminate[ed] the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term" and "clarif[ied] that subjective symptom evaluation is not an examination of an individual's character."

5

credibility finding" and "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008) (citing *Arnold v. Barnhart*, 473 F.3d 816, 822 (7th Cir. 2007)). In addition, "[a]lthough an ALJ's credibility determinations are generally entitled to deference, this Court has 'greater freedom to review credibility determinations based upon objective factors or fundamental implausibilities, rather than subjective considerations' such as the claimant's demeanor." *Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016) (quoting *Briscoe ex rel. Taylor v. Barnhart,* 425 F.3d 345, 354 (7th Cir. 2005)).

Ross testified that he was unable to continue working due to back pain and his back "locking up," knee pain, muscle spasms in his hands, "horrible" muscle cramps and spasms in his left calf, pain in his left shoulder, anxiety and depression, sleep problems, grogginess due to medication, and a learning disability. The ALJ acknowledged that Ross

> allege[d] disability due to conditions inclusive of degenerative disc disease, cerebral palsy with left-sided weakness, cramping and spasms, knee pain, sleep disorder, learning disability, anxiety and depression. He testified that he could not work due to severe back, knee and shoulder pain and could stand or walk about fifteen to thirty minutes, before needing to sit down and lift only about fifteen to twenty pounds. Further, he alleged disability due to depression and a learning disability, in addition to memory problems and difficulty being around people.

R. at 22. However, he does not specifically identify which of these symptoms could reasonably be expected to be produced by Ross's impairments. Instead, he states only that the "[e]vidence of record reveals the claimant's physical impairments are not as limiting as he alleges," *id.*, and states the same regarding his mental impairments, *id.* at 23. After summarizing some of the medical evidence of record, he then states that he "ha[s] accounted for possible symptoms associated with the claimant's degenerative disc disease, degenerative joint disease and periodic movement disorder" in his RFC, and that he also "ha[s] accounted for possible symptoms associated with the claimant's learning disorder, anxiety and depression" in his RFC. *Id.* But he

6

fails to explain the extent to which he finds Ross's allegations regarding his symptoms not credible and why.[6] As such, he failed to provide the required "accurate and logical bridge between the evidence and [his] conclusion that a claimant is not disabled." *Kastner*, 697 F.3d at 646. This failure requires remand. On remand, the ALJ shall address all of Ross's testimony regarding his symptoms and evaluate his alleged subjective symptoms as required by S.S.R. 16-3p. The ALJ also shall reexamine his explanation for rejecting the testimony and report of Ross's wife, as he fails to explain how this evidence is inconsistent with the objective evidence of record. *See* SSR 96–8P, 1996 WL 374184 at *5 (observing that when considered in combination with other impairments a non-severe impairment may become "critical" to the outcome of a claim) (cited in *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014)).

### B. Error at Step 3

Ross argues that the ALJ's analysis regarding whether Ross's impairments meet or equal a listing is inadequate in several respects. First, he argues that the ALJ failed properly to consider whether Ross met or equaled Listing 11.07, which, at the relevant time, required cerebral palsy:

With:

A. IQ of 70 or less; or
B. Abnormal behavior patterns, such as destructiveness or emotional instability; or
C. Significant interference in communication due to speech, hearing, or visual defect; or
D. Disorganization of motor function as described in 11.04B.

---

[6]Particularly troubling is the ALJ's failure to address Ross's testimony regarding the severe leg cramping he experiences several times a month, which he alleges cause him to scream in pain and stop what he's doing. *See id.* at 37. If this testimony is fully credited, this cramping likely would have a significant impact on Ross's ability to work full time. Because the ALJ does not address the issue, there is no way of knowing whether the ALJ does not believe the testimony or believes Ross is nonetheless not disabled. Further, the ALJ does not adequately address the effects of Ross's sleep issues on his ability to work.

7

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (2014). Ross argues that he satisfies 11.04D because he satisfies 11.04B, which required "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." *Id.* 11.00C, in turn, provided:

> C. Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment. The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

*Id.* While Ross points to evidence in his medical records that shows that he had resting leg tremors and some mild gait abnormalities, neither the records he points to nor the record as a whole suggests that he experiences anything approaching "persistent disorganization of motor function." The ALJ did not err in his consideration of the Listings relating to cerebral palsy.

The same is true of the ALJ's conclusion that Ross's degenerative disc disease and degenerative joint disease did not meet or equal a listing—again, Ross fails to point to evidence of record that would support a finding that his impairments are of the severity required to satisfy Listing 1.02 or 1.04. Contrary to Ross's suggestion, the ALJ was not required to address every notation in his medical records in arriving at his step 3 conclusion. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (noting "repeated assertion that an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence") (citation omitted).

Finally, with regard to his mental impairments, Ross argues that the ALJ erred by not analyzing whether he met or equaled Listing 12.07. As the Commissioner correctly points out, any such error is harmless, inasmuch as the ALJ's reasoning for finding that Ross did not meet or

8

equal Listing 12.02, 12.04, or 12.06—that he did not satisfy the "paragraph B" criteria—is equally applicable to Listing 12.07, and Ross does not argue that that assessment was erroneous.

Ross has failed to demonstrate that the ALJ erred at step 3.

### C. Failure to Account for Limitations in Concentration, Persistence, and Pace in RFC

Ross next argues that the ALJ failed properly to account for the moderate limitations with respect to concentration, persistence, and pace that he found Ross had. The Court agrees. Once the ALJ found that those limitations existed, he was required to account for them in his RFC and in his hypothetical questions to the vocational expert. *O'Connor-Spinner v. Astrue*, 627 F.3d 619 (7th Cir. 2010) ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir.2009) (hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases) (*cited in Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2014)). While the ALJ did include in his RFC and hypothetical questions a limitation of no more than two or three steps per task and only superficial interaction with the public, co-workers, and supervisors, and he did ask the vocational expert what the effect of being off task for 5% of the time would be, he did not explain why he believed the evidence indicated that those restrictions accounted for the moderate difficulties of concentration, persistence, and pace that he found. This should be corrected on remand. *See Taylor v. Colvin*, 829 F.3d 799, 801–02 (7th Cir. 2016) (noting Seventh Circuit's "rejection of the view that 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace'") (citing *Yurt*, 758 F.3d at 858-59).

### D. Weight Given State Agency Medical Professionals

The ALJ's explanation of the weight he gave to the state agency medical professionals' opinions is as follows:

> Significant weight is accorded to the state disability determination medical professionals because their conclusions regarding the nature and severity of the claimant's impairments are deemed expert opinion evidence from a non-examining source. Generally, such opinions are entitled to considerable deference when they are supported by the record. However, these doctors saw did not see [sic] the full record received at the hearing level.

R. at 24. Ross argues that this explanation is deficient; it is more accurately characterized as nonsensical. On remand, the ALJ shall explain what weight he gave to each of the state agency medical professional's opinions (individually, not as a group) and why he assigned that weight. If, in fact, an opinion was not based on the entirety of the medical evidence of record, the ALJ shall specifically explain what impact the omission had on the weight he gave to that opinion.

### E. Vocational Expert's Testimony

On remand, the ALJ also shall seek clarification of the vocational expert's testimony which, as Ross points out, does not appear to be entirely consistent with the Dictionary of Occupational Titles.

### V. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is **REVERSED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with the Court's Entry.

SO ORDERED: 3/28/17

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication